IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

EDWARDO G. CHAPALET,
      Petitioner,

vs.                       Case No.:  5:14cv113/MW/EMT

SECRETARY FLORIDA DEPARTMENT
OF CORRECTIONS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner Edwardo G. Chapalet's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (ECF No. 24). Respondent filed "Alternative Motions to Dismiss Amended Petition, or to Require Chapalet to Expand the Record" (ECF No. 32). Respondent requested that the court dismiss the habeas petition as untimely or require Chapalet to expand the record with evidentiary material in support of his equitable tolling argument (*id.*). Respondent also filed relevant portions of the state court record (*id.*). Chapalet filed a response in opposition to the motion to dismiss, as well as evidentiary material in support of his equitable tolling argument (ECF No. 40).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.

*See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).

After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

I.    BACKGROUND AND PROCEDURAL HISTORY

Following a jury trial in the Circuit Court in and for Bay County, Florida, Case No. 2006-CF-2907, Chapalet was found guilty of one count of extortion and one count of misdemeanor battery (ECF No. 32-1, Ex. A at 45–46, Ex. B, Ex. D).[1] On April 3, 2007, he was sentenced as a habitual felony offender to fifteen years in prison on the extortion count, with pre-sentence jail credit of 225 days, and time served on the battery count (ECF No 32-1, Ex. A at 55–61, Ex. C).

Chapalet's court-appointed counsel filed a notice of appeal (ECF No. 32-1, Ex. A at 71). The Florida First District Court of Appeal ("First DCA") assigned Case No. 1D07-2455 (ECF No. 32-1, Ex. PD-2). On May 28, 2007, Chapalet wrote a letter to

---

[1] All citations to the state court record refer to the exhibits submitted with Respondent's motion (ECF No. 32). If a cited page has more than one page number, the court cites to the "Bates stamp" page number. All page references to documents which are not part of the state court record reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Attorney Rudolph ("Rusty") Shepard informing him that his (Chapalet's) mother had

funds to retain Shepard, and identifying several issues which he believed should be

raised on direct appeal (ECF No. 40 at 20).  On June 27, 2007, Shepard filed a notice

of appearance in the trial court and the First DCA (ECF No. 32-1, Ex. PD-2, Ex. A at

99).

On July 9, 2007, Chapalet again wrote Shepard a letter identifying issues that

he believed should be raised on direct appeal (ECF No. 40 at 27).  In another letter

dated the same day, Chapalet asked whether Shepard had received his previous letter,

and stated that he had may questions and issues to discuss with Shepard concerning

his case (*id.* at 26).  On July 24, 2007, Shepard sent Chapalet a letter stating the

following:

> I am in receipt of your correspondence dated July 9, 2007.  As you
> know, I have been retained by your mother, Florence Bennett, to
> represent you in the direct appeal in the above referenced matter.  The
> record on appeal was completed on July 17, 2007.  I have 30 days from
> that date to file my initial brief with the First District Court of Appeal in
> this case.
>
> The appeal that I am handling is a direct appeal, which deals with
> controversial issues and decisions made by the trial judge in your case.
> As I am reviewing the trial transcripts, I also have a number of factual
> questions and wonder why Mr. Alldredge [Chapalet's trial counsel]
> made some of the decisions he made in this case.  The particular appeal
> that we are required to handle first is the direct appeal dealing with
> issues brought up by the judge.  Upon completion of the direct appeal,

<u>we can go back and question the decisions made by Mr. Alldredge in a</u> <u>Rule 3.850 Motion for Ineffective Assistance of Counsel.  I have not yet</u> <u>been retained for that appeal, nor can the Rule 3.850 appeal be made</u> <u>until after the direct appeal is completed</u>.  I will do my best to track you down in the Department of Corrections so that I can talk to you via telephone about what is going on with your case.

I am requesting that you write to me as soon as possible to tell me your most current address, additionally, please feel free to include any questions that you have.

(ECF No. 40 at 11) (emphases added).

On August 13, 2007, Shepard filed a motion for extension of time to file an initial brief in the direct appeal (ECF No. 32-1, Ex. PD-2).  The First DCA granted the motion (*id.*).  On August 26, 2007, Chapalet wrote Shepard a letter asking whether Shepard had received the "paperwork" he had sent "about 3 months ago," and asking Shepard to send trial transcripts and advise him as to Shepard's assessment of the direct appeal (ECF No. 40 at 28).  On September 26, 2007, Shepard filed another motion for extension of time to file an initial brief, which the First DCA granted (*id.*).

On December 10, 2007, Shepard filed an <u>Anders</u> brief (*id.*).  Shepard also filed a motion to withdraw from representing Chapalet on direct appeal; however, the motion apparently did not include a certificate of service showing that he served it upon Chapalet (*see id.*).  On December 13, 2007, the First DCA denied the motion to

withdraw without prejudice to Shepard's filing an amended motion which stated Chapalet's address and showed that a copy of the motion was served upon Chapalet (*id.*).  On December 21, 2007, Shepard filed amended motion to withdraw (*id.*).  On December 26, 2007, Chapalet wrote to Shepard asking why he was withdrawing (ECF No. 40 at 46).  On January 8, 2008, the First DCA denied Shepard's motion to withdraw, citing Payne v. State, 589 So. 2d 1037 (Fla. 1st DCA 1991), in which the First DCA suggested that the proper procedure when an attorney files an Anders brief on behalf of a client is for counsel to file a separate motion seeking leave for the client to file a brief pro se (ECF No. 32-1, Ex. PD-2).  The First DCA set a 30-day deadline for Chapalet to file a pro se initial brief (*id.*).

On February 14, 2008, Chapalet wrote Shepard a letter referencing "our last telephone conversation" (ECF NO. 40 at 35–36).  Chapalet inquired as to the status of the direct appeal, and identified three issues of trial court error which he believed were meritorious (*id.*).  On February 26, 2008, Shepard filed a motion to allow Chapalet to file a pro se brief (*id.*).  On March 10, 2008, Chapalet wrote a letter to Shepard listing issues he believed were meritorious for his direct appeal and a 3.850 motion (ECF No. 40 at 42–44).  Also on that date, the First DCA issued an order directing Shepard to show cause, within 10 days, why the initial Anders brief should

not be stricken with leave to amend due to deficiencies in the initial brief (ECF No. 32-1, Ex. PD-2).[2]

On April 3, 2008, the First DCA issued an order striking the initial <u>Anders</u> brief and extending the deadline for Shepard to file an amended brief to April 23, 2008 (*id.*).  On April 22, 2008, Chapalet wrote a letter to Shepard requesting that Shepard contact him (ECF No. 40 at 47).  On April 23, 2008,  Shepard filed an amended <u>Anders</u> brief (ECF No. 32-1, Ex. PD-2).  On April 28, 2008, Chapalet wrote a letter to Shepard requesting that he schedule a telephone conference with him (ECF No. 40 at 48).  Also on that date, the First DCA issued order directing Shepard to correct deficiencies in the amended <u>Anders</u> brief within 10 days (ECF No. 32-1, Ex. PD-2).[3]

On May 7, 2008, Shepard filed second amended <u>Anders</u> brief (ECF No. 32-1, Ex. PD-2).  On May 16, 2008, the First DCA issued another order directing Shepard to correct deficiencies in the second amended brief within 10 days (*id.*).  On May 22, 2008, Chapalet wrote to Shepard acknowledging that he had received documents from Shepard (ECF No. 40 at 40).  On May 28, 2008, Shepard filed a third amended <u>Anders</u>

---

[2] The First DCA's docket sheet indicates that Shepard's <u>Anders</u> brief failed to comply with Florida's appellate rules because it did not describe the evidence heard in the trial court with citations to the record (*see* ECF No. 32-1, Ex. PD-2).

[3] The First DCA's docket sheet indicates that the amended Anders brief failed to comply with Florida's appellate rules because the table of contents did not list the issues for review or summary of the argument (*see* ECF No. 32-1, Ex. PD-2).

brief (ECF No. 32-1, Ex. PD-2, Ex. E).  On June 3, 2008, Chapalet wrote a letter to

Shepard inquiring if he should file a pro se initial brief in light of Shepard's filing an

Anders brief (ECF No. 40 at 61–62).  On June 12, 2008, Chapalet wrote another letter

to Shepard acknowledging that he had just received mail from Shepard's law firm

stamped May 28, 2008 (ECF No. 40 at 37).  Chapalet stated he "discovered some

serious issues I know you can use on my 3.850 motion," and asked Shepard to review

the issues and schedule a telephone conference (*id.*).  On June 18, 2008, Shepard filed

an amended motion to withdraw (ECF No. 32-1, Ex. PD-2).  On June 26, 2008,

Chapalet wrote a letter to Shepard stating he had not received any response to his

letters and requested that Shepard contact him (ECF No. 40 at 38).  On July 9, 2008,

the First DCA again denied Shepard's motion to withdraw, citing Payne (ECF No. 32-

1, Ex. PD-2).

On August 3, 2008, Chapalet wrote a letter to Shepard, asking if he had

received his letters and requesting that Shepard schedule a telephone conference (ECF

No. 40 at 41).  On August 5, 2008, Shepard wrote Chapalet a letter stating the

following:

> As you may know, I have been trying to set up a telephone
> conference with you since July 2 of this year.  My understanding from
> your classification officer is that you have been placed in disciplinary
> confinement, and cannot be brought to the telephone to speak with me.

As we have spoken of numerous times previously, I have filed an Anders Brief in your case.  What that means is that after reviewing your case I could not find any justiciable issues to bring before the Court.  As I have already advised you, you have the opportunity to file a brief in proper person with the First District Court of Appeal regarding any issues you feel I may have overlooked.

Further, as we have also discussed, <u>your mother retained me to explore a direct appeal on your behalf</u>.  The direct appeal does not appear to have merit.  That is to say after research and review I do not feel the judge made any reversible errors in your case.  However, I do believe that your attorney made errors in affirmatively advising you that the State could not change the Information filed in your case after a Speedy Trial Demand had been filed.  Secondly, I feel that your attorney may have been deficient in his preparation of the case and of you as a potential witness in your Trial.  Once the District Court of Appeal has disposed of the direct appeal in your case, I feel the best course of action for us to pursue would be a Rule 3.850 Motion for Ineffective Assistance of Counsel.

I look forward to talking with you over the telephone when your administrative confinement is complete.  In the alternative, I will be happy to correspond with you via U.S. Mail, and you may feel free to contact me with any further questions or comments that you may have.

(ECF No. 40 at 12) (emphasis added).  On August 10, 2008, Chapalet wrote to Shepard acknowledging receipt of Shepard's August 5 letter, and asking Shepard when he could "get this 3.850 motion on the road"  (ECF No. 40 at 45).

On September 30, 2008, Chapalet wrote to Shepard requesting that he set up a telephone consultation for December 3, 2008 (ECF No. 40 at 32).  He also asked Shepard if he was ready to file the 3.850 motion (*id.*).  The copy of the letter from Shepard's file contains a notation dated October 2, 2008:  "Per Rusty schedule

something for next week." (*id.*).  On October 28, 2008, Chapalet wrote to Shepard

stating he waited in his classification officer's office for 15 minutes for the telephone

conference that was scheduled for 10:30 a.m., but no one called (ECF No. 40 at 33).

He asked Shepard to set up another telephone conference (*id.*).

On January 20, 2009, the First DCA issued an order directing Shepard to file

a supplemental certificate of service within 10 days, indicating that he served Chapalet

with a copy of the third amended Anders brief and motion to allow Chapalet to file a

pro se brief (ECF No. 32-1, Ex. E).  On January 27, 2009, Shepard filed an amended

motion to allow Chapalet to file a pro se brief, which included a certificate of service

stating that a copy of the motion had been served upon the State (*see* ECF No. 32-1,

Ex. PD-2, Ex. E).

On February 23, 2009, the First DCA issued order directing Shepard to show

cause, within 10 days, why sanctions should not be imposed against him personally

for failing to comply with the January 20, 2009 order (ECF No. 32-1, Ex. PD-2).  On

March 4, 2009, Shepard filed response to the show cause order and a motion to

withdraw (*id.*).  On March 6, 2009, the First DCA discharged the show cause order

and granted Chapalet until March 30, 2009, to file a pro se initial brief (*id.*).  On

March 8, 2009, Chapalet wrote to Shepard stating that his mother had been trying to

contact Shepard for the previous three months, but could not reach him (ECF No. 40

at 65).  Chapalet request that Shepard to contact his mother (*id.*).  On March 23, 2009, the First DCA denied Shepard's motion to withdraw, citing <u>Payne</u> (ECF No. 32-1, Ex. PD-2).

On May 4, 2009, Chapalet wrote to Shepard stating that he had been released from administrative confinement three weeks prior, and requested that Shepard schedule a telephone conference to update him on the status of the direct appeal (ECF No. 40 at 39)

On July 16, 2009, the First DCA affirmed the judgment of conviction per curiam without written opinion (ECF No. 32-1, Ex. F).  <u>Chapalet v. State</u>, 13 So. 3d 1058 (Fla. 1st DCA 2009).  On the next day, July 17, 2009, Chapalet wrote Shepard a letter requesting the status of the direct appeal, and inquiring as to whether Shepard had filed a Rule 3.850 motion yet (ECF No. 40 at 64).  The First DCA issued the mandate in the direct appeal on August 27, 2009 (*id.*).

On September 1, 2009, Chapalet wrote to Shepard stating he had sent Shepard six letters in the past seven months, but had not heard from him (ECF No. 40 at 34).  He asked whether Shepard had filed the 3.850 motion yet (*id.*).

In December of 2009, Shepard and Chapalet had telephone conference.[4]  On January 29, 2010, Chapalet wrote to Shepard stating that his family had been

_____

[4] Chapalet referenced the conference in subsequent letters.

attempting to contact Shepard, but "it seems you been very busy lately" (ECF No. 40 at 24). Chapalet reminded Shepard that the previous month (December of 2009), Shepard told him he would visit him after the holidays to review the 3.850 motion, and he asked Shepard to contact him (*id.*).

On March 10, 2010, Chapalet wrote to Shepard and reminded him that Shepard had told him in December of 2009, that he would visit him after the holidays so they could review the 3.850 motion before Shepard filed it (ECF No. 40 at 19). Chapalet inquired as to the status of the Rule 3.850 motion (*id.*).

In August of 2010, Chapalet filed a complaint with The Florida Bar regarding Shepard's failure to communicate with him (*see* ECF No. 24-1, Ex. 1). On August 22, 2010, Chapalet wrote to Shepard asking why Shepard had not contacted him (ECF No. 40 at 25). He stated that his family was "still calling" Shepard's office, but Shepard's secretary was "giving [them] the run around" (*id.*). Chapalet asked Shepard to send him the trial transcripts, the prosecutor's file, and written statements of one of the witnesses (*id.*). He stated, "too much time has pass [sic] already with nothing done!" (*id.*). He stated, "Ain't no telling [sic] how much time I have left on my appeal." (*id.*).

On August 26, 2010, Chapalet wrote to Shepard and referenced the fact that the two had spoken earlier that day (ECF No. 40 at 18). Chapalet stated that he had forgotten to mention to Shepard that he was concerned about his federal habeas

deadline (*id.*).  Chapalet asked Shepard to "speed the process" of filing the Rule 3.850

motion, so he did not "lose" his federal time (*id.*).  He mentioned that the mandate in

his direct appeal issued August 27, 2009 (*id.*).  Chapalet asked Shepard to send him

the trial transcripts, prosecutor's file, and written statements of one of the witnesses,

and he stated that the could complete his review and revision of Shepard's draft of the

Rule 3.850 within two weeks from receipt of the materials (*id.*).

 On the next day, August 27, 2010, The Florida Bar sent Shepard a letter stating

that it received a Request for Assistance from Chapalet, and that the nature of

Chapalet's request suggested that there may have been a lack of communication with

Shepard's office which, if substantiated, could constitute a violation of the ethical

rules and lead to disciplinary action (ECF No. 24, Ex. 1).  The Bar requested that

Shepard contact Chapalet by September 10, 2010, so that the matter could be resolved

without a disciplinary filed being opened and investigated (*id.*).  The Bar advised

Chapalet (by copy of the letter) that if the Bar did not hear from either him or Shepard

within thirty days, the Bar would assume that the matter had been resolved (*id.*).

 On October 12, 2010, Shepard filed Chapalet's 3.850 motion (ECF No. 32-1,

Ex. G at 104–07).  Shepard subsequently filed an amended motion asserting eight

grounds (*id.* at 110–20).  The state circuit court summarily denied seven grounds and

set a limited evidentiary hearing on the remaining ground (Ground Two) (ECF No.

32-2, Ex. H at 365–74).  Shepard represented Chapalet at the evidentiary hearing, which was held on June 14, 2012 (ECF No. 32-2, Ex. K).  In an order rendered August 17, 2012, the circuit court issued a final order denying the amended Rule 3.850 motion (ECF No. 32-2, Ex. J at 609–13).  Shepard filed a notice of appeal on September 14, 2012 (*id.* at 651).  On September 26, 2012, Shepard filed a motion to withdraw in the circuit court (*id.* at 657–58).  The circuit court granted Shepard's motion to withdraw on October 23, 2012 (*id.* at 664).  On December 21, 2012, Shepard filed a motion to withdraw in the First DCA, Case No. 1D12-4455 (*see* ECF No. 32-1, Ex. PD-2).  The First DCA granted the motion on January 10, 2013 (*see id.*).  Chapalet filed a pro se initial brief (ECF No. 32-3, Ex. L).  On September 6, 2013, the First DCA affirmed the circuit court's decision denying the Rule 3.850 motion (ECF No. 32-3, Ex. N).  Chapalet v. State, 145 So. 3d 99 (Fla. 1st DCA  2013) (Table).  The mandate issued November 5, 2013 (*id.*).  Chapalet filed a notice of appeal in the Supreme Court of Florida, Case No. SC13-2077 (ECF No. 32-3, Ex. O).  The state supreme court dismissed the case for lack of jurisdiction on November 14, 2013 (ECF No. 32-3, Ex. P).  Chapalet v. State, 130 So. 3d 1275 (Fla. 2013) (Table).

On October 17, 2013, while the post-conviction appeal was pending, Chapalet filed a pro se motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (ECF No. 32-3, Ex. Q).  In an order rendered

December 18, 2013, the state circuit court dismissed the motion as not cognizable under Rule 3.800, and impermissibly successive under Rule 3.850(f) (ECF No. 32-3, Ex. R).

On January 7, 2014, Chapalet filed another pro se Rule 3.800(a) motion (ECF No. 32-3, Ex. S at 1–3). The state circuit court denied the motion in an order rendered January 27, 2014 (*id.* at 6–7). Chapalet filed a notice of appeal in the circuit court on March 12, 2014 (*id.* at 42–43). The First DCA dismissed the appeal, Case No. 1D14-1369, as untimely on April 25, 2014, without prejudice to his filing a petition for belated appeal (ECF No. 32-3, Ex. T). <u>Chapalet v. State</u>, 136 So. 3d 1275 (Fla. 1st DCA 2014) (Mem).

Chapalet commenced the instant federal habeas action on May 2, 2014 (ECF No. 1 at 1).

On or about September 21, 2015, Chapalet filed a petition for belated appeal in the First DCA, Case No. 1D15-4327, seeking to appeal the circuit court's denial of the Rule 3.800(a) motion. *See* <u>http://www.1dca.org</u> (Search Case No. 1D15-4327). The First DCA denied the petition on October 7, 2015. <u>Chapalet v. State</u>, 175 So. 3d 932 (Fla. 1st DCA 2015) (Mem).

II.     ANALYSIS

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-

132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of

limitation applies to the filing of a habeas petition by a person in custody pursuant to

a state court judgment.  The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

Respondent argues, and Chapalet does not dispute, that the appropriate statutory

trigger for the federal limitations period is the finality date of the judgment of

conviction, pursuant to § 2244(d)(1)(A) (*see* ECF No. 32 at 4; ECF No. 24 at 47).

Under federal law, the judgment becomes final for purposes of § 2244(d)(1)(A) upon

expiration of the 90-day period in which a defendant may seek direct review of his

conviction in the United States Supreme Court.  The 90-day period runs from the date of entry of the judgment sought to be reviewed.  *See* <u>Chavers v. Sec'y, Fla. Dep't of Corr.</u>, 468 F.3d 1273, 1275 (11th Cir. 2006).  Federal Rule of Civil Procedure 6(a) provides that "[i]n computing any period of time prescribed or allowed by . . . any applicable statute, the day of the act, event or default from which the designated period of time begins to run shall not be included."  Fed. R. Civ. P. 6(a); *see also* <u>Washington v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001) (Rule 6 applies to calculation of one-year statute of limitations under AEDPA).  Here, the 90-day period for seeking certiorari review was triggered by the First DCA's affirmance of Chapalet's conviction, on July 16, 2009, and it expired 90 days later, on October 15, 2009.  Therefore, the statute of limitations began to run on October 16, 2009, the day after the 90-day period for Chapalet to file a petition for review in the United States Supreme Court expired.  Chapalet had one year from that date, or until October 16, 2010, to file his § 2254 petition.  *See* <u>Downs v. McNeil</u>, 520 F.3d 1311, 1318 (11th Cir. 2008) (limitations period should be calculated according to "anniversary method," under which limitations period expires on anniversary of date it began to run) (citing <u>Ferreira v. Dep't of Corr.</u>, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)).  Chapalet did not file his federal petition on or before October 16, 2010; therefore, it is untimely unless tolling principles apply and render it timely.

Chapalet asserts he is entitled to equitable tolling of the federal limitations period.  He states he retained Attorney Shepard to represent him on direct appeal and in the Rule 3.850 proceeding (ECF No. 24 at 47).  Chapalet states Shepard "failed to return the Petitioner [sic] letters and Petitioner's family phone calls for 11 months concerning the Petitioner [sic] 1 year federal deadline" (*id.*).  He asserts that only after he filed the Bar complaint against Shepard in August of 2010, did Shepard file the Rule 3.850 motion (*id.*).  Chapalet thus appears to argue that Attorney Shepard's failure to communicate and failure to file the Rule 3.850 motion sooner entitles him to equitable tolling (*id.*).

"Because the time period specified in 28 U.S.C. § 2244 is a statute of limitations, not a jurisdictional bar, the Supreme Court has held § 2244(d) does not bar the application of equitable tolling in an appropriate case."  Cole v. Warden, Ga. State Prison, 768 F.3d 1150, 1157 (11th Cir. 2014) (citing Holland v. Florida, 560 U.S. 631, 645, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010)).  "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Holland, 560 U.S. at 649.  As an extraordinary remedy, equitable tolling is "limited to rare and exceptional circumstances and typically applied sparingly."  Cadet v. Fla. Dep't of Corr., 742 F.3d 473, 477 (11th Cir. 2014).

Equitable tolling is assessed on a case-by-case basis, considering the specific circumstances of the case.  Hutchinson v. Florida, 677 F.3d 1097, 1098 (11th Cir. 2012); *see* Holland, 560 U.S. at 649–50 (clarifying that the exercise of a court's equity powers must be made on a case-by-case basis).   A petitioner has the burden of establishing his entitlement to equitable tolling; his supporting allegations must be specific and not conclusory.  Hutchinson, 677 F.3d at 1099.  "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence."  Holland, 560 U.S. at 653; *see also* Smith v. Comm'r, Ala. Dep't of Corr., 703 F.3d 1266, 1271 (11th Cir. 2012) (per curiam) (acknowledging petitioners are not required "to exhaust every imaginable option, but rather to make reasonable efforts").  Determining whether a factual circumstance is extraordinary to satisfy equitable tolling depends not on how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.  Cole, 768 F.3d at 1158 (quotation marks and citation omitted).

"[Equitable] [t]olling based on counsel's failure to satisfy AEDPA's statute of limitations is available only for 'serious instances of attorney misconduct.'" Christeson v. Roper, — U.S. —, —, 135 S. Ct. 891, 894, 190 L. Ed. 2d 763 (2015) (quoting Holland, 560 U.S. at 651–52).

In <u>Thomas v. Attorney Gen., Fla.</u>, 795 F. 3d 1286 (11th Cir. 2015), the Eleventh

Circuit articulated the types of attorney misconduct that may serve as an extraordinary

circumstance to support a claim to equitable tolling:

> [W]e have explained that attorney negligence, and even gross negligence
> or recklessness, is not an extraordinary circumstance; "abandonment of
> the attorney-client relationship . . . is required." <u>Cadet</u>, 742 F.3d at 481.
> At the same time, the factors we had identified in <u>Holland I</u>—"bad faith,
> dishonesty, divided loyalty, [and] mental impairment," 539 F.3d at
> 1339—may still serve as extraordinary circumstances that support a
> claim to equitable tolling.  On remand, therefore, the district court must
> decide whether [petitioner's attorney's] conduct amounted to an
> abandonment of [the petitioner], as that concept has developed in
> <u>Holland II</u>, <u>Maples</u>, and <u>Cadet</u>, or whether her conduct nonetheless
> amounted to serious instances of attorney misconduct warranting
> equitable tolling.

<u>Thomas</u>, 2015 WL 4597532, at *5 (citing <u>Cadet v. Fla. Dep't of Corr.</u>, 742 F.3d 473

(11th Cir. 2014); <u>Holland v. Florida (Holland I)</u>, 539 F.3d 1334 (11th Cir. 2008),

*rev'd on other grounds*, 560 U.S. 631, 130 S. Ct. 2549, 177 l. Ed. 2d 130 (2010)

(<u>Holland II</u>); <u>Maples v. Thomas</u>, — U.S. —, 132 S. Ct. 912, 181 L. Ed. 2d 807

(2012)).

In determining whether attorney conduct warrants equitable tolling, Chapalet

must establish that Attorney Shepard's "failings were so egregious as to constructively

sever the agency relationship between [Shepard] and [himself], thus excusing [him]

from [] bearing the risk of his attorney's mistake."  <u>Damren v. Florida</u>, 776.3d 816,

822 (11th Cir. 2015); *see also* <u>Cadet</u>, 742 at 481 (holding that under "well-settled

principles of agency law, . . . a petitioner bears the risk of attorney error unless his attorney has essentially abandoned him and thereby severed the principal-agent relationship" (citing Maples, 132 S. Ct. at 922–23)).

In Cadet, the Eleventh Circuit articulated the appropriate standard for gauging when attorney error amounts to an extraordinary circumstance, in light of the Supreme Court's decisions in Maples and Holland:

> The Supreme Court in Holland did not actually decide whether Holland himself was entitled to equitable tolling. 130 S. Ct. at 2565. Still, the majority opinion in that case, read by itself, could be interpreted to mean that attorney misconduct amounting to more than "garden variety" negligence, but falling short of abandonment, may warrant equitable tolling. The Holland opinion, however, cannot be read by itself. Instead, that opinion must be read in light of the Court's explanation of Holland eighteen months later in its Maples decision. In Maples the Court pointed out that the petitioner in Holland had "urged that attorney negligence was not the gravamen of his complaint. Rather, he asserted that his lawyer had detached himself from any trust relationship with [him] . . . [and had] abandoned [him]. . . ." Maples, 132 S. Ct. at 923 (quotation marks omitted). The Maples Court characterized Holland as a case of attorney abandonment, not one of gross negligence, emphasizing that it involved "counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years." Id. (quoting Holland, 130 S. Ct. at 2568 (Alito, J., concurring)). In the course of doing so, the Court reached back to Justice Alito's concurring opinion in Holland and adopted its distinction between attorney negligence, however styled and however egregious, on the one hand, and attorney abandonment on the other. See id. at 923 & n.7. And the Court stated that the critical distinction between any kind of negligence and abandonment applies in both the equitable tolling and procedural default contexts. Id.

The Supreme Court explained in <u>Maples</u> that the critical distinction between attorney negligence and attorney abandonment is grounded in "well-settled principles of agency law," under which a petitioner bears the risk of attorney error unless his attorney has essentially abandoned him and thereby "severed the principal-agent relationship."  *Id.* at 922–23.  The Court reiterated the rule that a petitioner is bound by his attorney's mistake in missing a filing deadline ("We do not disturb that general rule"), but held that "[a] markedly different situation" exists when "an attorney abandons his client without notice, and thereby occasions the default."  *Id.* at 922.  The client is not responsible for what happens after his attorney abandons him.

In light of the Supreme Court's <u>Maples</u> decision, we hold that attorney negligence, however gross or egregious, does not qualify as an "extraordinary circumstance" for purposes of equitable tolling; abandonment of the attorney-client relationship, such as may have occurred in <u>Holland</u>, is required.  Applying that standard to this case, our inquiry is whether Cadet "has shown that his attorney . . . abandoned him, thereby supplying the 'extraordinary circumstances'" necessary to warrant equitable tolling of the § 2244(d) statute of limitations period. *See id.* at 924.

<u>Cadet</u>, 742 F.3d at 480-83 (footnotes omitted).  The court in <u>Cadet</u> explained the

difference between negligence and abandonment:

Goodman's negligence in missing the filing deadline does not mean that he abandoned or effectively abandoned Cadet.  Negligence, however gross, is not the same as abandonment.  If it were, there would be no point in <u>Maples</u>' refinement or explication of what <u>Holland</u> said. Abandonment, which <u>Maples</u> made the standard, denotes absolute renunciation or withdrawal, or a complete rejection or desertion of one's responsibilities, a walking away from a relationship.  *See* Black's Law Dictionary 2 (6th ed. 1990) (defining "abandon" as "[t]o give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert"); Random House Webster's Unabridged Dictionary 2 (2d ed. 2001) (defining "abandon" as "to leave completely and finally; forsake utterly; desert," or "to give up;

discontinue, withdraw from"); Webster's New World College Dictionary 1 (3d ed. 1991) (defining "abandon" as "to give up (something) completely or forever" and explaining that it "implies leaving a person or thing, either as a final, necessary measure . . . or as a complete rejection of one's responsibilities, claims, etc."); *see also* Harris v. United States, 367 F.3d 74, 81 (2d Cir. 2004) (equating "abandonment" with "physical disappearance or constructive disappearance") (citations omitted); State v. Bradley, 811 S.W. 2d 379, 384 (Mo. 1991) (defining "abandonment" as conduct that amounts to "a total default in carrying out the obligations imposed upon [ ] counsel," not merely ineffective assistance).

Goodman did not withdraw from representing Cadet, renounce his role as counsel, utterly shirk all of his professional responsibilities, or walk away from their attorney-client relationship.  Unlike the lawyer in Holland, Goodman did not fail to keep his client abreast of key developments in his case, did not ignore his client's inquires or concerns, and did not sever nearly all communication with his client for a period of years—or even for months or even for weeks.  *See* Holland, 130 S. Ct. at 2564 (counsel, among other deficiencies, "failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, [ ] despite Holland's many pleas for that information," and "failed to communicate with his client over a period of years, despite various pleas from Holland that [counsel] respond to his letters"); Maples, 132 S. Ct. at 923 (characterizing Holland as a case of abandonment involving "counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years") (quotation marks omitted).  And unlike the lawyers in Maples, Goodman did not wholly desert, forsake, or abandon his client without notice, thereby ceasing to serve as his agent "in any meaningful sense of that word" and leaving him "without any functioning attorney of record."  *See* Maples, 132 S. Ct. at 924–27. Instead, Goodman maintained regular contact with Cadet throughout his state post-conviction proceedings; responded to all of his many inquiries and concerns about the federal filing deadline; sent him copies of the relevant statutory language and state appellate court opinion; and prepared and eventually filed a § 2254 petition on his behalf.

Although Goodman did fail to file that § 2254 petition on time, he did not willfully disregard Cadet's instructions that he do so.  Based on his misreading of § 2244(d), Goodman genuinely believed that he had ample time in which to prepare and file a federal habeas petition following the conclusion of Cadet's Rule 3.850 proceedings.  As Justice Alito noted in his <u>Holland</u> concurrence, articulating the critical distinction that would become the <u>Maples</u> standard, an attorney's miscalculation of the filing deadline, inadvertent failure to file a § 2254 petition on time, or failure "to do the requisite research to determine the applicable deadline" are all types of errors that are "constructively attributable to the client."  <u>Holland</u>, 130 S. Ct. at 2567 (Alito, J., concurring).

<u>Cadet</u>, 742 F.3d at 484–85.

Here, Chapalet alleges Attorney Shepard failed to respond to his letters and telephone calls from his family for eleven months of the federal limitations period, and that Shepard filed a tolling motion only after Chapalet filed a Bar complaint against him regarding his lack of communication.  In support of his equitable tolling argument, Chapalet submitted the following documents which he obtained from Shepard's office:  (1) an unexecuted copy of a retainer agreement between Appleman & Shepard Law Offices and Chapalet and "Payor/Florence Bennett" for "representation for post-conviction relief," (2) a copy of all of Chapalet's correspondence to Shepard, including letters written by others on Chapalet's behalf, (3) a copy of all of Shepard's correspondence to Chapalet, and (4) a Bar complaint Chapalet filed against Shepard in 2012 (*see* ECF No. 40, Ex. B).  Chapalet states he requested that Shepard provide a copy of the 2010 Bar complaint, but Shepard's office

failed to provide it (*see* ECF No. 40, Ex. A).  However, Chapalet previously submitted a copy of the Bar's letter to Shepard, dated August 27, 2010, confirming that Chapalet filed a Bar complaint against Shepard in 2010 (*see* ECF No. 24-1).

  Chapalet does not allege, nor is there any evidence suggesting, that he retained Shepard to represent him in a federal habeas proceeding.  The evidence shows that in 2007, Chapalet's mother retained Shepard to represent Chapalet on direct appeal, and the parties contemplated Shepard's representing Chapalet in a Rule 3.850 proceeding. Petitioner subsequently did retain Shepard to represent him in the Rule 3.850 proceeding, however, the exact date he retained him is unclear.  In Shepard's letter to Chapalet dated July 24, 2007, Shepard acknowledged he was retained to represent Chapalet on direct appeal, but Shepard expressly stated that at that time, he had <u>not</u> been retained to represent Chapalet in a Rule 3.850 proceeding.  Giving Chapalet the benefit of the doubt, the court assumes that Chapalet retained Shepard to represent him in the Rule 3.850 proceeding prior to August 27, 2009, the date the First DCA issued the mandate in the direct appeal.

The evidence shows that in December of 2009, Shepard and Chapalet conferred regarding the Rule 3.850 proceeding, and agreed that Shepard would prepare a draft Rule 3.850 motion and forward it to Chapalet for review before he filed it.  Under Florida law, Shepard had two years from August 27, 2009, or until August 27, 2011,

to file a timely Rule 3.850 motion.  *See* <u>Breland v. State</u>, 58 So. 3d 326, 327 (Fla. 1st DCA 2011) (two-year time limit under Rule 3.850 commences upon appellate court's issuance of mandate).

The evidence shows that after December of 2009, Chapalet wrote to Shepard twice, once on January 29, 2010, and once on March 10, 2010, inquiring as to the status of the Rule 3.850 motion.  Shepard apparently did not respond to Chapalet's inquiries.  On August 22, 2010, Chapalet wrote to Shepard a third time, and the two of them conferred just four days later, on August 26, 2010.  Chapalet references this conference in a letter to Shepard that he wrote the same day, August 26, 2010.  This letter contains Chapalet's first mention of a federal deadline—Chapalet stated that he forgot to mention to Shepard that he was concerned about his federal habeas deadline (ECF No. 40 at 18).  Chapalet asked Shepard to "speed the process" of filing the Rule 3.850 motion, so that he would not "lose" his federal time (*id.*).  Chapalet mentioned that the mandate in his direct appeal issued August 27, 2009 (*id.*).  On October 12, 2010, six weeks after Chapalet's first mention of a federal deadline, Shepard filed the Rule 3.850 motion (ten months prior to the two-year deadline for filing a Rule 3.850 motion, and four days prior to the expiration of the federal limitations period).

To the extent Chapalet argues he is entitled to equitable tolling for the period October 16, 2009 (the date the federal statute of limitations commenced) to October

12, 2010, the date Shepard filed the Rule 3.850 motion, he has not satisfied the Eleventh Circuit standard. The Eleventh Circuit has made clear that, as a matter of law, attorney negligence, however gross or egregious, is not an extraordinary circumstance to warrant equitable tolling; "abandonment of the attorney-client relationship . . . is required." <u>Cadet</u>, 742 F.3d at 481. Petitioner's allegations do not suggest that Attorney Shepard's conduct was so egregious as to constructively sever the agency relationship. Chapalet retained Shepard to represent him in state court proceedings. There is no evidence that representation in a federal habeas proceeding or preservation of the federal filing deadline was included in or contemplated by the retainer agreement. Shepard had until August of 2011 to file Chapalet's state post-conviction application, which is the only post-conviction matter for which he was retained. Chapalet himself allowed 314 days of the federal limitations period to expire (from October 16, 2009 to August 26, 2010) before he even mentioned or expressed concern to Shepard about the federal deadline. Upon Chapalet's mentioning the federal deadline, Shepard filed the tolling Rule 3.850 motion six weeks later.

Chapalet's allegations do not suggest that Shepard utterly shirked all of his professional responsibility or otherwise walked away from their attorney-client relationship during the time period Chapalet claims entitlement to equitable tolling (October 16, 2009 to October 12, 2010). Furthermore, Chapalet's allegations do not

suggest bad faith, dishonesty, divided loyalty, mental impairment, or any other conduct on the part of Attorney Shepard that "nonetheless amounted to serious instances of attorney misconduct warranting equitable tolling." *See* <u>Thomas</u>, 2015 WL 4597532, at *5.  Moreover, because Shepard was not retained to file a federal habeas petition, and he filed a tolling state motion prior to expiration of the federal deadline, Chapalet failed to demonstrate a causal connection between Chapalet's conduct and the late filing of his federal petition.  Therefore, Chapalet failed to carry his burden of establishing his entitlement to equitable tolling during the period October 16, 2009, to October 12, 2010.

Once Shepard commenced the Rule 3.850 proceeding (again, the only post-conviction proceeding for which he was retained), he actively litigated the case by filing an amended motion and a reply to the State's response to the motion, responding to court orders, representing Petitioner during the evidentiary hearing, and filing a timely notice of appeal of the circuit court's final order denying the Rule 3.850 motion.  Shepard's representation of Chapalet ended prior to conclusion of the Rule 3.850 appeal, on November 5, 2013, and Chapalet was aware of that; therefore, Chapalet's equitable tolling argument, which relates solely to Shepard's representation, does not extend beyond that date.  As of that date, **361 days** of the federal limitations period had expired (October 16, 2009 to October 12, 2010).

Chapalet filed a pro se tolling motion, a Rule 3.800 motion, on October 17, 2013, while the Rule 3.850 appeal was still pending.  The Rule 3.800 motion was pending until January 18, 2014, upon expiration of the 30-day period for appealing the circuit court's decision to the First DCA.  But on January 7, 2014, prior to that date, Chapalet filed another tolling motion, a Rule 3.800(a) motion. That motion was pending until February 27, 2014, upon expiration of the 30-day period for appealing the circuit court's decision to the First DCA.  The federal limitations period expired four days later, on March 3, 2014.[5]  Chapalet did not file his federal habeas petition until May 2, 2014.  Therefore, his habeas petition is untimely.

As a final matter, the undersigned is satisfied that an evidentiary hearing on equitable tolling is not warranted in this case.  The Eleventh Circuit has explained that § 2244 "does not require a hearing on the issue of time-bar or equitable tolling." Drew v. Dep't of Corr., 297 F.3d 1278, 1292 (11th Cir. 2002).  The petitioner "must plead or proffer enough facts that, if true, would justify an evidentiary hearing on the issue." Hutchinson, 677 F.3d at 1099.  "And the allegations supporting equitable tolling must be specific and not conclusory." Id.  While an evidentiary hearing may

---

[5]Although Chapalet filed a notice of appeal on March 12, 2014, attempting to appeal the circuit court's denial of his Rule 3.800(a) motion, it did not toll the federal limitations period, because the First DCA dismissed it as untimely.  See Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1316 (11th Cir. 2006) (an application for post-conviction relief that is untimely under state law is not "properly filed" for purposes of tolling the AEDPA's limitations period).

be necessary where material facts are in dispute, an evidentiary hearing is not required where no basis exists to believe that further inquiry would help the petitioner prove entitlement to equitable tolling.  *See* <u>San Martin v. McNeil</u>, 633 F.3d 1257, 1271–72 (11th Cir. 2011); <u>Drew</u>, 297 F.3d at 1292.

Here, Chapalet has offered no reason to believe, by way of allegations or supporting evidence, that further inquiry by the district court would help him prove that Attorney Shepard's conduct constituted abandonment or amounted to serious instances of attorney misconduct.  Therefore, an evidentiary hearing in this case is not warranted.  *See* <u>Lugo v. Sec'y, Fla. Dep't of Corr.</u>, 750 F.3d 1198, 1209 (11th Cir. 2014) ("It is not enough for a habeas petitioner, who had the benefit of appointed counsel in federal court, to allege in general and conclusory terms that the appointed lawyers who represented him in earlier proceedings acted negligently or engaged in misconduct.  And vague allegations about the existence of impediments, without more, or an argument that fails to explain how such impediments prevented the timely filing of the petition, does not establish extraordinary circumstances.  Nor are they sufficient to warrant an evidentiary hearing.") (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)); *see also, e.g.*, <u>Spears v. Warden</u>, 605 F. App'x 900, 905–06 (11th Cir. 2015) (unpublished but recognized for persuasive authority) (district court did not abuse its discretion in failing to hold evidentiary

hearing on equitable tolling where petitioner offered no reason to believe, by way of

allegations or supporting evidence, that further inquiry by the district court would help

him prove entitlement to equitable tolling).

## III.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he

district court must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant," and if a certificate is issued "the court must state the

specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."

Rule 11(a), Rules Governing Section 2254 Cases.  A timely notice of appeal must still

be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules

Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional

right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct.

1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing)

(citation omitted).  Therefore, the undersigned recommends that the district court deny

a certificate of appealability in its final order.  Rule 11(a) additionally provides:

"Before entering the final order, the court may direct the parties to submit arguments

on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254

Cases.  If there is an objection to this recommendation by either party, that party may

bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That Respondent's motion to dismiss (ECF No. 32) be **GRANTED**.

2.     That the amended habeas petition (ECF No. 24) be **DISMISSED** with prejudice as untimely.

3.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 5th day of January 2016.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**