UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

EDWARDO G. CHAPALET,

 *Petitioner*,

v.        Case No. 5:14cv113-MW/EMT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

 *Respondent.*
_____/

**ORDER ON REPORT AND RECOMMENDATION**

 The petitioner, Edwardo G. Chapalet, is serving a 15-year sentence in state prison. He asks for a writ of habeas corpus, challenging his state court criminal conviction. The respondent, the Secretary of the Florida Department of Corrections, moves to dismiss the petition as untimely. The magistrate judge's report and recommendation concludes that no evidentiary hearing is necessary and the petition should be dismissed as untimely.

 Chapalet's former lawyer did not file a motion for postconviction relief in state court for more than a year after Chapalet's direct appeal failed, and more than two years after the lawyer identified it as the best course of action for "us" to take. The lawyer

1

did not file the 1-page motion for postconviction relief until after the Florida Bar notified him that Chapalet had complained. This delay consumed all but a few of Chapalet's 365 days to file his federal habeas petition in this Court. These and other facts plausibly suggest abandonment. Further inquiry may help Chapalet prove entitlement to equitable tolling. This order rejects the report and recommendation in part, remands the matter to the magistrate judge to conduct an evidentiary hearing on the issue of equitable tolling and prepare another report and recommendation, and grants the motion to expand the record.

I

Under part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a 1-year period of limitation for bringing a federal habeas petition begins to run when the time to ask the Supreme Court to directly review a state criminal conviction runs out. 28 U.S.C. §2244(d)(1)(A). Once it starts that 1-year AEDPA clock stops while a "properly filed" application for state postconviction or collateral review is pending. *Id*. §2244(d)(2). The clock also stops if equitable tolling is appropriate.

The 1-year clock started to run for Chapalet on October 16, 2009. Absent a "properly filed" application in state court or equitable tolling, the clock would run out on October 16, 2010. An application was not "properly filed" in state court until October 12, 2010. Whether this federal habeas petition is timely—whether there was still time on the clock when Chapalet filed it on May 2, 2014—depends on whether the clock stopped—was equitably tolled—for some or all of the period from October 16, 2009, to October 12, 2010.

II

The record so far shows that Chapalet's mother hired a lawyer, Rudolph ("Rusty") Shepard, to represent Chapalet after he was convicted in state court. Chapalet accepted that representation. In a letter dated July 24, 2007, Shepard explained that he was retained for a direct appeal, and that he was not *yet* retained for a subsequent motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. ECF No. 40, at 11. But Shepard said that "[u]pon completion of the direct appeal, we can go back and question the decisions made by [Chapalet's lawyer at trial] in a Rule 3.850" motion. ECF No. 40, at 11. And the available evidence of the retainer agreement, such as it is, indicates that the

3

legal representation related to "Post-Conviction Relief." ECF No. 40, at 7.

Over the next two years, Shepard went about trying to file a brief in the state appellate court conceding the direct appeal was meritless and withdrawing from the representation. During the first year Chapalet sent Shepard at least ten letters, two referencing a Rule 3.850 motion. Some letters reference other contacts between them. For example, a letter dated February 14, 2008, referred to their "last telephone conversation." ECF No. 40, at 35. In a May 2008 letter, Chapalet acknowledged that he had received documents from Shepard. ECF No. 40, at 40. In a letter dated August 3, 2008, Chapalet referred to a phone conversation. ECF No. 40, at 41. The full content of these communications are not in the record.

In a letter to Chapalet dated August 5, 2008, Shepard explained that the direct appeal had no merit and that he felt "the best course of action for us to pursue would be a Rule 3.850 Motion for Ineffective Assistance of Counsel" once the appellate court had disposed of the case. ECF No. 40, at 12. In a letter dated August 10, 2008, Chapalet asked Shepard when he could "get this 3.850

motion on the road." ECF No. 40 at 45. And in a letter dated September 30, 2008, Chapalet asked if Shepard was "ready to file the 3.850." ECF 40, at 32.

The state appellate court affirmed Chapalet's conviction on July 16, 2009, and issued its mandate on August 27, 2009. In a letter dated September 1, 2009, Chapalet asked Shepard if he had "filed my 3.850 yet." ECF No. 40, at 34. But Shepard had not filed the Rule 3.850 motion, and would not file it for more than a year. The reason for the delay is not in this record.

Sometime in December 2009, Shepard and Chapalet had a telephone conference. The contents of that conference are unknown. But in a letter dated January 29, 2010, Chapalet said that "before Christmas you [Shepard] told me you would visit me after the visit after the holidays so we could go over my 3.850 motion, is everything still the same Sir?" ECF No. 40, at 24. And in a letter dated March 10, 2010, Chapalet asked Shepard "[w]hat[']s the [update] on my 3.850? Have you f[il]ed it yet?" ECF No. 40, at 19. Chapalet continued that "last time I talked to you was in December, and you said you were going to come see me after the holidays so we could go over my 3.850 before you file it." ECF No. 40, at 19.

But Shepard had not filed the Rule 3.850 motion, and would not file it for another seven months.

In August 2010, Chapalet filed what the Florida Bar described as a "Request for Assistance" about Shepard. ECF No. 24-1, at 2. In a letter dated August 26, 2010, Chapalet noted that he and Shepard spoke that day by telephone. ECF No. 40, at 18. Chapalet says that he forgot bring the matter of his "federal habeas time concerning my 3.850 motion" to Shepard's attention. ECF No. 40, at 18. Chapalet asked Shepard to "speed the process up on [his] 3.850 motion" so he would not "lose" his federal time. ECF No. 40, at 18.

The next day, August 27, 2010, the Florida Bar sent Shepard a letter about Chapalet's request for assistance. According to the Bar, "the nature of the request suggests that there may have been a lack of communication" between them. ECF No. 24-1, at 2. The Bar asked Shepard to contact Chapalet by September 10, 2010, so that the matter could be resolved without the opening of a disciplinary file and an investigation.

About a month later, on October 12, 2010, Shepard filed Chapalet's Rule 3.850 motion. The motion and its accompanying affidavit and memorandum of law total four pages. ECF No. 32-1,

6

at 520–23. That includes two case captions and three certificates of service. *Id.*

Chapalet's initial Rule 3.850 motion ultimately failed when the state supreme court dismissed the case for lack of jurisdiction on November 14, 2013. While that appeal was pending, Chapalet filed another motion pro se, which was dismissed on December 18, 2013. On January 7, 2014, Chapalet filed another pro se motion, which was dismissed by the state circuit court on January 27, 2014. The time to appeal the January 27, 2014, dismissal ran out thirty days later on February 26, 2014. Chapalet filed an untimely notice of appeal on March 12, 2014. The state appellate court dismissed the untimely appeal on April 25, 2014.

Chapalet brought his federal habeas petition on May 2, 2014. ECF No. 1. In his amended petition, Chapalet asserts that it is timely because, among other things, Shepard failed to respond to his letters and phone calls from his family "for 11 months concerning the petitioner's 1 year federal deadline." ECF No. 24, at 47.

### III

A habeas petitioner like Chapalet is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in

7

his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). It's not easy to climb those mountains.

A lawyer's action—or lack of action—is ordinarily attributed to the client. That means that a lawyer's mistakes—however bad—are not an "extraordinary circumstance." *Thomas v. Attorney Gen., Florida*, 795 F.3d 1286, 1293 (11th Cir. 2015). So, when a prisoner asks for equitable tolling because of a lawyer's failures, the question is usually whether the attorney effectively abandoned the client, placing the circumstances beyond the client's control such that the lawyer's errors are not attributable to the client. *Id*.

When answering that question a court considers, among other things, whether the lawyer withdrew from the representation, renounced his role as counsel, "utterly shirked his responsibilities, or walk[ed] away from the[] attorney-client relationship." *Cadet v. Florida Dep't of Corr.*, 742 F.3d 473, 484 (11th Cir. 2014). A lawyer's willful disregard of the client's instructions to file something in court is surely relevant. *Id*. A lawyer's bad faith, dishonesty, divided loyalty, or mental impairment may also serve as extraordinary circumstances. *Thomas*, 795 F.3d at 1292.

An "extraordinary circumstance" that stands in the way of petitioner's completion of a *state* application for relief may toll the

8

*federal* habeas clock. *See Knight v. Schofield*, 292 F.3d 709, 711 (11th Cir. 2002); *see also Hollinger v. Sec'y Dep't of Corr.*, 334 F. App'x 302, 307 (11th Cir. 2009) (noting that a "state court's 8-month delay in providing [petitioner] notice of its denial of his Rule 3.850 motion eroded nearly two-thirds of [his] one-year limitations period and left [him] only 12 days on his AEDPA clock"). This is so because "[t]he law is clear that [the petitioner cannot] file a federal motion until his pending state application [is] denied." *See Knight*, 292 F.3d at 711; *see also* 28 U.S.C. §2254(b)–(c).

A district court has discretion to conduct an evidentiary hearing. *See Lugo v. Sec'y, Florida Dep't of Corr.*, 750 F.3d 1198, 1206 (11th Cir. 2014). The burden is on the petitioner to show the need for an evidentiary hearing. *Chavez v. Sec'y Florida Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). The allegations must be factual, specific, and not conclusory. *Id*. In deciding whether to hold an evidentiary hearing on equitable tolling, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to equitable tolling. *See id*. Courts have held evidentiary hearings if there are circumstances consistent with a petitioner's petition under which he would be entitled to a finding of

9

equitable tolling. *See Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003). For example, the Eleventh Circuit has remanded a habeas petition for an evidentiary hearing to find out exactly why a lawyer delayed in filing a petition. *See Thomas*, 795 F.3d at 1296.

The record here suggests that Shepard undertook to represent Chapalet on his Rule 3.850 motion two years before eventually filing it and a year before it could have been filed. But it wasn't filed for almost another year after the conviction was final. It's true that Chapalet frames his arguments about Shepard in terms of a failure to communicate. The record plainly supports that conclusion. But the facts underlying a failure to communicate may also be facts tending to show abandonment. The record evidence, coupled with Chapalet's liberally construed pleading, plausibly suggests—that is, one can reasonably infer—that Shepard might have abandoned that representation for a period of time. And if, for example, Shepard "utterly shirked" his professional responsibilities to file a Rule 3.850 motion from, say, December 2009 until August 2010, Chapalet may be able to establish extraordinary circumstances. It depends on the facts as they are found.

So it's important to develop fully the critical findings of fact—the when, the "what, the how, and most importantly, the

10

why" of the scope of representation from its inception and the reasons Shepard did not file the Rule 3.850 motion until October 12, 2010. *Id.* at 1294. The magistrate judge must conduct an evidentiary hearing and complete a report and recommendation setting out facts relevant to whether Chapalet's lawyer abandoned him within the meaning of the law.

Accordingly,

**IT IS ORDERED**:

1. The report and recommendation, ECF No. 43, is **REJECTED** in part.

2. The respondent's alternative motion to dismiss or expand the record, ECF No. 32, is **GRANTED** in part as it relates to the expansion of the record and the Clerk shall terminate the motion. This Court reserves a ruling on the motion to dismiss the petition.

3. The matter is remanded to the magistrate judge to (a) conduct an evidentiary hearing on the issue of equitable tolling; and (b) prepare a supplemental report and recommendation.

**SO ORDERED on March 15, 2016.**

**s/Mark E. Walker         ____**
**United States District Judge**
