# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION

EDWARDO G. CHAPALET,

       *Petitioner*,

v.                         **Case No. 5:14cv113-MW/EMT**

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

       *Respondent.*

_____/

## ORDER ON SECOND REPORT AND RECOMMENDATION

Previously, in ECF No. 47, the Court remanded this matter to the Magistrate Judge to (a) conduct an evidentiary hearing on the issue of equitable tolling and (b) prepare a supplemental report and recommendation. Thereafter, the Magistrate Judge appointed the public defender to represent the petitioner, ECF No. 52, and held an evidentiary hearing on June 23, 2016, the transcript of which is available at ECF No. 63. The petitioner and respondent each filed closing arguments relating to the issue of equitable tolling, ECF No. 64 and 65. The Magistrate Judge then issued a Second Report and Recommendation, ECF No. 66, recommending that the petitioner is not entitled to equitable tolling in this case and

1

that the motion to dismiss at ECF No. 32 should be granted and the petition dismissed.  For the reasons which follow, the Court accepts the Report and Recommendation in part and rejects it in part.

Under part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a one-year period of limitation for bringing a federal habeas petition begins to run when the time to ask the Supreme Court to directly review a state criminal conviction runs out. 28 U.S.C. §2244(d)(1)(A). Once it starts, that one-year AEDPA clock stops while a "properly filed" application for state postconviction or collateral review is pending. *Id*. §2244(d)(2). The clock also stops if equitable tolling is appropriate.

The one-year clock started to run for Chapalet on October 16, 2009. Absent a "properly filed" application in state court or equitable tolling, the clock would have run out on October 16, 2010. An application was not "properly filed" in state court until October 12, 2010, when counsel filed a Rule 3.850 motion.  At that time, petitioner had 4 days left on the one-year federal clock.  The Rule 3.850 motion and the appeals related to it tolled the clock until November 14, 2013, when the Florida Supreme Court dismissed the case for lack of jurisdiction.

In the meantime, though, in October of 2013, petitioner filed his first Rule 3.800(a) motion, which was rejected by the circuit court on December 13, 2013. Before the 30-day period for appealing that order expired, petitioner filed a second Rule 3.800(a) motion, which was dismissed on January 27, 2014. Petitioner had until February 27, 2014, to file an appeal of that dismissal but did not file one until March 12, 2014. That appeal was dismissed as untimely on April 25, 2014.

The Court agrees with the Magistrate Judge that the notice of appeal filed on March 12, 2014, did not toll the federal limitations period because the First DCA dismissed it as untimely. <u>See Sweet v. Sec'y, Dep't of Corr.</u>, 467 F.3d 1311, 1316 (11th Cir. 2006) (an application for post-conviction relief that is untimely under state law is not "properly filed" for purposes of tolling the AEDPA's limitations period). Therefore, the tolling period ended on February 27, 2014, and the one-year federal filing period ran out 4 days later, on March 3, 2014. The instant § 2254 petition was filed on May 2, 2014 – two months after the one-year period expired.

Thus, whether this federal habeas petition is timely—whether there was still time on the clock when Chapalet filed it on

May 2, 2014—depends on whether the clock stopped—was equitably tolled—for some or all of the period from October 16, 2009, to October 12, 2010.

A habeas petitioner like Chapalet is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Here, Chapalet argues that his attorney's failure to communicate and failure to file the Rule 3.850 motion sooner entitles him to equitable tolling.

As explained in greater detail in the Second Report and Recommendation, and confirmed by the testimony at the evidentiary hearing (see ECF No. 63), counsel did not communicate with petitioner or petitioner's family from December 2009 to the end of August 2010, despite repeated letters from petitioner to counsel and repeated attempts by members of petitioner's family to reach counsel on the telephone. Petitioner and counsel both testified that counsel only contacted petitioner after counsel received notice of a Florida Bar complaint by petitioner against counsel. Petitioner testified as follows:

Q. And did he say he was going to come see you?

4

> A. Yes, sir. He said after the holidays he'd be there to
> see me.
> Q. And what year would that be?
> A. 2009.
> Q. All right. And did he come see you?
> A. Not right then.
> Q. Did he eventually come see you?
> A. Eventually, after the Florida Bar complaint on him.
> Q. Pardon?
> A. After the Florida Bar complaint, after I filed it, and then
> he came to see me.

ECF No. 63 at 11; ECF No. 66 at 47-49.  Counsel also testified

that he did not communicate with petitioner from December of

2009 until after he received notice of the filing of the bar com-

plaint:

> Q. And then late August or in September, you are notified
> by the Bar that your client has filed a complaint. Then you
> speak with him, and you file the 3.850?
> A. Yes, sir.
> Q. That could have been filed a year earlier?
> A. Yes, sir.

ECF No. 63 at 62.[1]

---

[1] The Magistrate Judge notes that the letter from the Florida Bar
to counsel giving formal notice of the bar complaint was dated
August 27, 2010, and that the contact between counsel and peti-
tioner was on the day before, August 26, 2010.  ECF No. 66 at 48.
Despite the date on the letter, the Court relies upon the testi-
mony of both the counsel and petitioner that the contact on Au-
gust 26, 2010, was in response to counsel learning of the bar com-
plaint against him.

The Court agrees with the Magistrate Judge's analysis of Eleventh Circuit law concerning when an attorney's conduct can justify equitable tolling under <u>Thomas v. Attorney Gen., Fla</u>., 795 F. 3d 1286 (11th Cir. 2015) and <u>Cadet v. Fla. Dep't of Corr.</u>, 742 F.3d 473 (11th Cir. 2014).  The Eleventh Circuit's standard can be summarized by this quote from <u>Cadet</u>:

> In light of the Supreme Court's <u>Maples</u> decision, we hold that attorney negligence, however gross or egregious, does not qualify as an "extraordinary circumstance" for purposes of equitable tolling; abandonment of the attorney-client relationship, such as may have occurred in <u>Holland</u>, is required. Applying that standard to this case, our inquiry is whether Cadet "has shown that his attorney . . . abandoned him, thereby supplying the 'extraordinary circumstances'" necessary to warrant equitable tolling of the § 2244(d) statute of limitations period. *See id.* at 924.

<u>Cadet</u>, 742 F.3d at 480-83.  Applying this standard, the Magistrate Judge found that petitioner had not shown that counsel abandoned petitioner as a client during the period of December 2009 to August 2010:

> In the context of the scope of Shepard's representation, the status of those matters during the period October 16, 2009 to October 12, 2010 (i.e., the direct appeal had concluded, and the deadline for commencing the Rule 3.850 proceeding was not until August 27, 2011), and the ebb and flow of communication during Shepard's five-year representation of Chapalet, the undersigned concludes that Attorney Shepard's failure to communicate or respond to two of Chapalet's letters during the eight-month period between

> December of 2009 and late August of 2010, and Shepard's
> six-week delay in filing the Rule 3.850 motion (from late
> August to October 12, 2010) were at most negligent, but did
> not rise to the level of abandonment of the attorney-client
> relationship.

ECF No. 66 at 53.

Upon review, the Court declines to follow this part of the

Second Report and Recommendation and concludes that the total

lack of communication from December 2009 to August 2010 rises

to the level of abandonment described in Holland. The Eleventh

Circuit characterized the conduct in Holland as follows:

> Unlike the lawyer in Holland, Goodman did not fail to keep
> his client abreast of key developments in his case, did not
> ignore his client's inquires or concerns, and did not sever
> nearly all communication with his client for a period of
> years—or even for months or even for weeks. *See* Holland,
> 130 S. Ct. at 2564 (counsel, among other deficiencies,
> "failed to inform Holland in a timely manner about the cru-
> cial fact that the Florida Supreme Court had decided his
> case, [ ] despite Holland's many pleas for that information,"
> and "failed to communicate with his client over a period of
> years, despite various pleas from Holland that [counsel] re-
> spond to his letters"); Maples, 132 S. Ct. at 923 (character-
> izing Holland as a case of abandonment involving "counsel's
> near-total failure to communicate with petitioner or to re-
> spond to petitioner's many inquiries and requests over a pe-
> riod of several years") (quotation marks omitted).

Cadet, 742 F.3d at 484–85. Here, counsel ignored his client's in-

quiries and concerns and failed to communicate with his client

over a period of months despite pleas by petitioner and his family

members that counsel so communicate.  While the near total failure to communicate in <u>Holland</u> lasted years not months, the Court finds that the eight-month failure to respond in this case suffices to show that counsel had ceased to be petitioner's agent "in any meaningful sense of that word."  <u>Maples</u>, 132 S. Ct. at 924–27.  Thus, the attorney's conduct in this case can serve as the "extraordinary circumstances" required for equitable tolling. <u>Holland v. Florida</u>, 560 U.S. 631, 649 (2010).

The <u>Holland</u> case explains, however, that another element is required for equitable tolling: petitioner must have been pursuing his rights diligently. <u>Id</u>. In this regard, the Court agrees with the Magistrate Judge that petitioner did not do so in this case.  Petitioner testified that he knew, as of September of 2010, that he had almost run out of all of his one-year time period to file his federal petition:

> Q.  Now, earlier you just told me that he had told you in 2009 he was going to come see you. How long was it that you waited until you filed a Florida Bar complaint?
>
> A. I filed the Florida Bar complaint in like September 2010, because I knew my -- I ain't had much longer. I know I was forced to. I had only like a month left of my one year federal time, if that.

ECF No. 63 at 12.

Later in the evidentiary hearing, petitioner testified that he knew he had only four days left on his federal time when the 3.850 motion was filed:

> Q. How many days left did you have on your one year for your federal habeas when the state 3.850 was filed?
>
> A. Four days.

Id. at 15.  As noted above, petitioner also knew that the state court had denied his second Rule 3.800(a) motion on January 27, 2014, making the federal one-year period commence on February 27, 2014, if he did not file an appeal.  Petitioner did not file a timely appeal and did not file his federal habeas petition for two months.  Also, the habeas petition he filed raised the same grounds as raised in the Rule 3.850 motion petitioner had since April of 2011.  ECF No. 66 at 54.  The Court agrees with the Magistrate Judge that, if petitioner had acted diligently, he would have converted that Rule 3.850 motion to a federal habeas petition during the months and years that the Rule 3.850 and 3.800(a) motions were pending in state court, to have the petition ready to file immediately upon resolution of his last state application.  Instead, while he was able to file an untimely appeal on March 12, 2014, he declined to file his

federal habeas petition until May, 2014.  Thus, the Court agrees with the Magistrate Judge that petitioner has not shown that he was diligently pursuing his rights and has not shown that the late filing was caused by his attorney's abandonment of him rather than his own lack of diligence. Accordingly,

**IT IS ORDERED**:

1. The Second Report and Recommendation, ECF No. 66, is **ACCEPTED** in part and **REJECTED** in part as described above.

2. The respondent's motion to dismiss the petition, ECF No. 32, is **GRANTED** and the petition is **DISMISSED**.

3.  The Clerk shall enter judgment stating, "The amended petition for writ of habeas corpus, ECF No. 24, challenging the judgment of conviction and sentence in *State of Florida v. Edwardo G. Chapalet, Bay County Circuit Case No. 06-2907-CFMA*, is DISMISSED WITH PREJUDICE.  A Certificate of Appealability is DENIED." The Clerk shall close the file.

**SO ORDERED on September 23, 2016.**

**s/Mark E. Walker                      **
**United States District Judge**

10